IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA, :
                                     :

      Plaintiff,                    :

                                       :      CIVIL ACTION NO.
                                       :      1:11-cv-01625-JEJ
v.                                    :      Electronically Filed

                                       :

UROLOGY OF CENTRAL            :
PENNSYLVANIA, INC. UROLOGY    :
ASSOCIATES OF CENTRAL         :
PENNSYLVANIA, P.C., MID-PENN    :
UROLOGY INC., and HARRISBURG   :
URO-CARE GROUP, P.C.            :

                                       :

      Defendants.                  :

## **FINAL ORDER**

### I.    **Introduction**

Plaintiff, the Commonwealth of Pennsylvania, filed its Complaint on

August 30, 2011, under Section 2 of the Sherman Act, 15 U.S.C. § 2, and

Sections 4C, 7 and 16 of the Clayton Act, 15 U.S.C. §§ 15C, 18 and 26, and

under the common law of the Commonwealth of Pennsylvania alleging that the

merger of five urology practices into Urology of Central Pennsylvania, Inc.

substantially lessened competition in one or more relevant health care services markets. Defendants contest the allegations of the Complaint, and believe that competition has not been lessened.

Plaintiff and Defendants, by their respective attorneys, have consented to the entry of this Final Order without trial or adjudication of any issue of fact or law, and without this Final Order constituting any evidence against, or any admission by, any party regarding any such issue of fact or law.

Therefore, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED AND DECREED:

## II.   **Jurisdiction**

1.     This Court has jurisdiction over the Defendants and subject matter of this action pursuant to Sections 4C and 16 of the Clayton Act (15 U.S.C. 15C and § 26). This Court has jurisdiction over the state claims pursuant to 28 U.S.C. §1367(a).

## III.   **Definitions**

As used in this Final Order:

2.     "Acquire" (except as otherwise provided in Section 21.1 hereof) means to purchase the whole or the majority of the assets, stock, equity, capital or other interest of a corporation or other business entity or to receive the right or

ability to designate or otherwise control the majority of directors or trustees of
a corporation or other business entity.

     3.    "Geographic Market," for purposes of this Final Order, but without
constituting Defendants' agreement that the same is a relevant geographic
market for antitrust purposes, means the Greater Harrisburg Metropolitan
Area consisting of an area within a 20-mile radius of Harrisburg,
Pennsylvania, and includes portions of Cumberland, Dauphin and Perry Counties.

     4.    "Health Plan" means any particular organized health-service
purchasing program, including, but not limited to, health insurance and
managed-care plans, whether offered by for-profit or non-profit, third-party
payors, providers or any other private entity, including Medicare Advantage and
Medicaid managed care plans, but not including purely government programs,
such as Medicare or Medicaid.

     5.    "Hospital" means a health care facility, licensed as a hospital,
having a duly-organized governing body with overall administrative and
professional responsibility and an organized professional staff that provides 24-
hour inpatient care, that may also provide outpatient services, and that has as a
primary function the provision of inpatient services for medical diagnosis,
treatment and care of physically injured or sick persons with short-term or
episodic health problems or infirmities.

6.    (a)    "Inflation Index" means the Consumer Price Index – All Urban Consumers Seasonally Adjusted Medical Care Services – All City Average ("CPI-MCS"), published by the Bureau of Labor Statistics.

(b)    "Extrapolated Inflation Index" shall mean the average growth in the Inflation Index for the three calendar years prior to the expiration of Your Contract times the number of years in the proposed contract between UCPA and the Health Plan.  Thus, if a proposed contract is for four years in duration, the Extrapolated Inflation Index would result from multiplying the annual average growth of the Inflation Index times four.

7.    "Most Favored Nations Clause" ("MFN") means any written or unwritten agreement between UCPA and a Health Plan that requires the Health Plan to receive the benefit of a better payment rate, term or condition than UCPA gives to another Health Plan.

8.    "Payment Demand" means the aggregate dollar amount for the CPT codes constituting 85% of the total Urology Services payments by a Health Plan to UCPA during the prior calendar year submitted to the Health Plan (on behalf of the Health Plan's members) multiplied times the demanded payment rates for each such CPT code.  To determine the top CPT codes, the actual utilization per code will be multiplied times the current contractual payment rate for that code resulting in an extended value per CPT code.

4

9.     "Payor Contract" means a contract between UCPA and a Health Plan for the furnishing of Urology Services and all other services by UCPA to Health Plan members.

10.     "Provider" means hospital, laboratory, physician, physician network or other health care professional.

11.     "Professional Urology Services" refers to professional services provided by a urologist who is especially trained in the medical specialty of urology – a surgical specialty focusing on the genitourinary portions of both the male and female body – and do not include radiation therapy, CT imaging or other ancillary services.

12.     "Urology Services" refers to services provided by a urologist who is especially trained in the medical specialty of urology – a surgical specialty focusing on the genitourinary portions of both the male and female body.

13.     "Urology of Central Pennsylvania, Inc." ("UCPA") means the urology practice created by the merger of Urology Associates of Central Pennsylvania, P.C.; Keystone Urology, P.C.; Mid-Penn Urology, Inc.; Harrisburg Uro-Care Group; and  William K. Daiber, D.O. UCPA is a corporation organized under the laws of the Commonwealth of Pennsylvania having its principal address at 1023 Mumma Road, Lemoyne, Pennsylvania.

5

14.   "Your Contract" means a contract between UCPA and a Health Plan

for the furnishing of UCPA services to Health Plan members and that was in effect

on January 1, 2008.

## IV.   **Terms**

For the period set forth below UCPA shall comply with the following:

15.   **Negotiations Between UCPA and Health Plans**

15.1   Any Health Plan licensed by the Pennsylvania Insurance

Department to serve the Geographic Market may, at its option, initiate the

contract resolution provisions of this Final Order contained in Paragraphs

15.2 to 15.12, at least 90 days prior to contract expiration if the following

conditions have been met.

> A.   The Health Plan and UCPA have been attempting to
>
> negotiate a contract for at least 180 days.
>
> B.   For Health Plans with a current contract with UCPA,
>
> UCPA's last Payment Demand is greater than the payment
>
> terms of its current  contract with the Health Plan plus the
>
> Extrapolated Inflation Index; and
>
> C.   The difference between the Health Plan's offer and
>
> UCPA's Payment Demand (calculated based on the
>
> relative utilization referenced in the definition of

Payment Demand above) would equal more than $500,000 if that offer and demand were applied to the number of the Health Plan's patients treated by UCPA in the previous calendar year.

15.2   In the event a Health Plan does not have a contract with UCPA, such Health Plan may request contract resolution if it meets subparagraphs 15.1 A and C above.

15.3   A Health Plan may opt into the contract resolution provisions of this Final Order if it meets the conditions identified in Paragraph 15.1 or 15.2 for initiating the contract resolution provision.  Such provisions shall only apply to Professional Urology Services.

15.4   Contract resolution under this Final Judgment shall be accomplished by last best offer arbitration utilizing the Health Plan offer and UCPA Payment Demand referenced in 15.1C above.

A.   The arbitration panel will be an independent body made up of three representatives.  A representative and his or her employer shall have none of the following relationships, currently or within the past five years, with UCPA or the Health Plan: employment, board membership, staff privileges, or acted as consultant or

advisor.  The Health Plan shall appoint one member of the Panel.  The representative appointed by the Health Plan shall come from an employer covered by any Health Plan in the Geographic Market.  UCPA shall appoint a second member.  The two members so appointed shall appoint a third.

B.    The Health Plan and UCPA shall each submit to the independent body its last contract payment offer.

C.    The independent body may retain experts or consultants to aid it in its deliberations, none of whom have any of the following relationships, currently or within the past five years, with either UCPA or the Health Plan: Employment, board membership, staff privileges, or acted as a consultant or advisor.

15.5   The independent body shall not prohibit the presentation to it for consideration any information provided by UCPA or the Health Plan, but must consider the following:

A.    The existing contract, if any between the Health Plan and UCPA.

B.  Prices paid by the Health Plan for comparable services in the Geographic Market, or such other counties UCPA and the Health Plan find agreeable.

C.  The costs incurred in providing urology services to UCPA's patients.

D.  The rate of increase or decrease in the median family income in the Geographic Market, as measured by the United States Department of Labor, Bureau of Labor Statistics.

E.  The rate of inflation as measured by the Inflation Index and (i) the extent to which any price increases under the existing contract between the Health Plan and UCPA were commensurate with the rate of inflation and (ii) the extent to which the Health Plan's premium increases, if any, were commensurate with the rate of inflation.

F.  The rate of increase, if any, in appropriations for Managed Care Organizations participating in Pennsylvania's Medical Assistance program for the Department of Public Welfare, in the case of a

Medicaid Managed Care Organization participant in this arbitration process.

G.    The actuarial impact of a proposed contract or rates paid by the Health Plan and a comparison of these rates in Pennsylvania with health plan rates in other parts of the country.

H.    The expected patient volume which likely will result from the contract.

I.    The independent body shall not consider the extent to which a Health Plan is or is not purchasing other services from UCPA.

15.6   Once the arbitration process has been invoked, the independent body shall set rules for confidentiality, exchange and verification of information and procedures to ensure the fairness for all involved and the confidentiality of the process and outcome. In general, the Health Plan and UCPA may submit confidential, competitively-sensitive information. Therefore, the independent body should ensure that it and any consultants it retains keep this information strictly confidential and do not disclose this information to other Health Plans or to other Providers.

15.7   The independent body must select either the Health Plan's proposed payment terms or UCPA's proposed payment terms in making a decision.

15.8   Because of the important interests affected, the independent body shall commence the arbitration process within twenty (20) days after it is triggered by a written request from a Health Plan.  It shall hold an arbitration hearing, not to exceed three (3) days, within forty-five (45) days of the commencement of the arbitration process.  The independent body shall render its determination within seven (7) days after the conclusion of the hearing.  The parties, by agreement, or the independent body, because of the complexity of the issues involved, may extend any of the time periods in this section, but the arbitration process shall take no more than ninety (90) days from its commencement.

15.9   UCPA and the Health Plan shall each bear the cost of their respective presentations to the independent body and shall each bear one-half of any other costs associated with the independent review.

15.10 During the above arbitration process, if a Health Plan has a contract for UCPA's services, it will continue to pay the reimbursement rates set forth in that contract.  This amount will promptly (within 60 days

after determination) be adjusted retroactively, and any shortfalls will be paid, to reflect the actual pricing determined by the independent body.

15.11 If a Health Plan has no contract for UCPA's services, the Health Plan shall pay for all services by UCPA, for which payment has not been made, in an amount equal to rates proposed in its contract during the arbitration process.  This amount will promptly (within 60 days after determination) be adjusted retroactively and any shortfalls will be paid, to reflect the actual pricing determined by the independent body.

15.12 If the amounts paid pursuant to Paragraphs 15.10 and 15.11 are less than the amounts owed under the contract awarded as the result of arbitration, the Health Plan shall pay interest on the difference.  If such amounts are greater than the amounts owed under the contract awarded as the result of arbitration, UCPA shall pay interest on the difference.  For purposes of calculating interest due under this paragraph, the interest rate shall be the U.S. prime lending rate offered by PNC Bank or its successor as of the date of the independent body's decision on arbitration.

16.   **Nondiscriminatory Access to UCPA**

16.1   Commencing 30 days from the date of entry of this Final Order, UCPA shall not refuse to treat, provided that the patient meets UCPA's payment requirements, or refuse to release medical records or

information about, patients on the basis of the identity or affiliation of a patient's primary care or other specialty physician, the patient's Health Plan or the patient's utilization of non-UCPA Providers.

17.   **Referrals**

17.1   Commencing 30 days from the date of entry of this Final Order, UCPA shall not require its employed and shareholder physicians to refer patients to a UCPA physician or service in situations where the patient is covered by a Health Plan that does not participate with UCPA for some physician or service or otherwise expresses a preference to be referred to a non-UCPA Provider.

17.2   Commencing 30 days from the date of entry of this Final Order, UCPA shall not refuse to refer a patient, whether for diagnosis or treatment, to a non-UCPA Provider, if such referral is requested by the patient, the patient's representative when such representative is authorized to make care decisions for a patient, or the patient's physician, provided that UCPA physicians shall not be required to make referrals to sources they believe to be medically inappropriate.  Based on current information, referrals for brachytherapy or to cancer centers in the Geographic Market, if desired by the patient, would not be viewed by UCPA doctors as medically inappropriate.

18.    **Health Plan Contracting**

18.1   Commencing 30 days from the date of entry of this Final Order, UCPA shall not enter into any Payor Contract with a Health Plan that expressly limits UCPA's ability to contract with another Health Plan. UCPA will not condition its contract with a Health Plan, or its provision of reasonable competitive prices to a Health Plan, on a limitation on the Health Plan's ability to contract with non-UCPA Providers. "Reasonable competitive prices" shall be defined as prices not substantially different from those charged to other Health Plans for similar volumes of services.

18.2   Commencing 30 days from the date of entry of this Final Order, UCPA shall not enter into any agreement with any Health Plan constituting 15% or more of UCPA's patient volume that includes a MFN to the benefit of UCPA or any Health Plan. The patient volume shall be calculated by dividing the number of UCPA patients covered by that Health Plan by the total number of UCPA patients covered by health plans of that Health Plan's type, whether commercial health plans, Medicare Advantage health plans or Medicaid managed care health plans. UCPA may not renew or extend any agreement without abandoning any term or provision which constitutes an MFN. UCPA shall inform the Attorney General of the presence of a MFN in any existing agreement of UCPA, by

14

providing a list of such agreements to the Attorney General not more than sixty (60) days from entry of this Final Order.

19.   **Disclosures**

19.1   Commencing 30 days from the date of entry of this Final Order, UCPA shall not require any Health Plan or patient to purchase radiation oncology or CT imaging services from itself or an entity affiliated with UCPA.

19.2   Commencing 30 days from the date of entry of this Final Order, when UCPA determines that a patient may require radiation oncology or CT imaging services, UCPA shall affirmatively inform the patient of the availability of such services from non-UCPA Providers.  To convey such information, UCPA shall provide patients a list of radiation oncology or CT services Providers (as applicable) that request to be listed, participate in the Medicare program and that are located in the Geographic Market.  The names of the radiation oncology or CT services Providers on the list shall all be of the same font and type.  The list shall disclose to the patient the amount UCPA estimates that the patient and his or her Health Plan shall pay UCPA for its radiation oncology or CT services.

19.3   UCPA must explain to the patients that the list is being provided to the patient because the patient has a choice of providers for radiation oncology or CT services.  The list must be provided and explained to the patient prior to UCPA making arrangements for these services for patients.

19.4   UCPA must document that the list was presented to the patient or to the individual acting on behalf of the patient.

19.5   UCPA shall provide a copy of the List to the Attorney General as part of its Annual Report to the Attorney General described in Paragraph 22 of this Final Order.

19.6   UCPA shall provide the number of patients monthly who received radiation oncology or CT imaging services (to the extent known to UCPA) as part of its Annual Report to the Attorney General described in Paragraph 22 of this Final Order, and the number of those patients that were treated at a UCPA-owned facility.

19.7   Commencing 30 days from the date of entry of this Final Order, UCPA shall not reprimand or discipline employed physicians for referring patients for radiation   oncology or CT imaging services to non-UCPA Providers.

16

20.   **PACE Urological Prescription Drug Assistance**

20.1   Within 30 days of entry of this Final Order, Defendants shall pay the Commonwealth of Pennsylvania, Office of Attorney General $100,000 to fund prescription drug purchases for urological diseases.  This fund shall be used by the  Department of Aging, PACE program to pay for prescription drug purchases for Pennsylvania citizens with urological diseases who apply to the PACE clearing house and who otherwise do not have prescription drug insurance and do not qualify for PACE or Medicare Part D.

21.   **Future Sales and Acquisitions in the Geographic Market**

21.1   UCPA shall not, directly or indirectly, acquire any urology practice in the Geographic Market, or permit itself to be acquired in its entirety as a single unit, without providing written notice to the Attorney General at least ninety (90) days prior to the date of closing.

21.2   UCPA agrees, in regard to Paragraph 21.1 above, to waive the confidentiality protections under the Hart-Scott-Rodino Act, 15 U.S.C. § 18a (h), the Antitrust Civil Process Act, 15 U.S.C. §§ 1311 et seq and any other applicable confidentiality provisions in effect as of the date of this Final Order, for the sole purpose of allowing the United States Department of

Justice or the Federal Trade Commission and the Pennsylvania Office of

Attorney General to share documents, information and analyses.

22.   **Annual Report** - Within 120 days of the closing of each fiscal year,

UCPA shall submit to the Attorney General an Annual Report on compliance with

all of the provisions of this Final Order.  This Annual Report shall be public,

provided that UCPA's proprietary information (including any information relating

to the specifics of UCPA's business, operations, finances, prices or plans) shall be

redacted from the public version.  Any unredacted report submitted by UCPA

pursuant to this section, and any documents or information relating to the specifics

of UCPA's business, operations, finances, prices or plans obtained from UCPA

during any investigation pursuant to any of the terms of this Judgment, including

without limitation investigations pursuant to Sections 21 or 33 hereof,  shall be

deemed confidential and not a public record pursuant to the Pennsylvania Right to

Know Law (collectively "the Confidential Information").  The Office of Attorney

General shall classify the Confidential Information under, and shall assert one or

more of the following Right to Know Law exemptions to any request or inquiry

relating to the Confidential Information:  (a) the non-criminal investigation

exception under 65 P.S. § 67.708(b)(17)(i), (ii) and (iv); (b) the trade secret and

proprietary information exception under 65 P.S. § 67.708(b)(11); (c) the

individually identifiable health information exception under 65 P.S. §

18

67.708(b)(5); or (d) any other applicable exception.   In the event a request is filed

seeking Confidential Information, the Office of Attorney General shall issue a

Denial based on one of the foregoing reasons pursuant to 65 P.S. § 67.903.  If an

appeal is filed from the Attorney General's Denial, the Office of Attorney General

shall provide notice to UCPA of such an appeal pursuant to Paragraph 30 relating

to notice and defend its position in any subsequent challenge or litigation

consistent with applicable law.

23.   **Binding on Successors and Assigns** - The terms of this Final Order

are binding on UCPA, its directors, officers, shareholders, managers, employees

(in their respective capacities as such), and to its successors and assigns, subject to

the provisions of paragraph 32 hereof, and provided that this Order shall not be

applicable to a purchaser of only a portion of the assets of UCPA which are less

than the entirety of UCPA as a single unit.

24.   **Complaint Procedure** - Any person, Provider, Health Plan or

consumer of medical services who wishes to report a possible violation of this

Final Order shall send a written description of the alleged violation to the Chief

Deputy Attorney General, Antitrust Section, Office of Attorney General, 14th

Floor, Strawberry Square, Harrisburg, Pennsylvania 17120.  The Office of

Attorney General shall transmit the complaint, keeping confidential the name

of the complainant, if necessary, to UCPA.  UCPA shall respond in writing to

the complainant and to the Attorney General within thirty (30) days from the

receipt of any complaint.  If the complaint is still unresolved, the Attorney General

will attempt to negotiate a satisfactory resolution.  If UCPA believes a complaint

to be unjustified, it may so advise the Attorney General and its obligations under

this paragraph will be satisfied unless it is otherwise reasonably advised by the

Attorney General to respond more fully to the complaint.  UCPA will

reasonably cooperate with the Attorney General to attempt to resolve any

complaints that have merit.

     25.   **Compliance** - To determine or secure compliance with this Final

Order or if the Attorney General receives a complaint pursuant to Paragraph 24 of

this Final Order, upon reasonable notice during normal business hours, any duly

authorized representative of the Attorney General shall be permitted:

          A.   Reasonable access to all non-privileged books, ledgers,

               accounts, correspondence, memoranda, other records and

               documents, in the possession or under the control of UCPA,

               relating to any matters contained in this Final Order; and

          B.   To interview officers, shareholders, managers or employees of

               UCPA regarding any matters contained in this Final Order.

     26.   **Reimbursement of Expenses** - Within 180 days after entry of this

Final Order, UCPA shall pay a total of $100,000 to reimburse the Attorney

General's costs incurred to conduct its investigation, which payment shall be used for future Public Protection Division purposes.

27. **Enforcement**

27.1  If the Attorney General believes that there has been a violation of this    Final Order, UCPA shall be promptly notified thereof. The Attorney General shall     thereafter give UCPA a reasonable opportunity to cure any alleged violation without  instituting legal action. If the alleged violation is not substantially cured by UCPA within sixty (60) days of the notification, the Attorney General may thereafter request this Court to undertake any remedial action deemed appropriate.  This time period  shall be extended in circumstances where the sixty (60) day period is not sufficient time to cure the alleged violation.

27.2  If the Attorney General prevails in any action or proceeding it brings to enforce this Final Order, the Court shall award costs and expenses, including a reasonable sum for attorney's fees.

28. **Limited Release** - This Final Order releases the Defendants and their officers, directors, agents, employees, and all of their successors and assigns, from any claims the Attorney General may have in connection with or resulting from or alleged to result from the formation or operation of UCPA, provided that this release shall not apply to activities of a purchaser of all or

21

part of UCPA, to the extent that activities occur after the expiration of this Final Order.  Nothing in this Final Order shall prevent the Attorney General from investigating and prosecuting UCPA for any other alleged violations of Federal and State antitrust laws.  Nothing in this Final Judgment shall authorize UCPA, its employees or subsidiaries or any UCPA employed or shareholder physician to engage in other conduct that would violate sections 1 or 2 of the Sherman Act. 15 U.S.C. §§ 1 or 2, or Pennsylvania common law doctrine against monopolies and unfair restraints of trade.

29.    **Legal Exposure** - No provision of this Final Order shall be interpreted or construed to require UCPA to take any action or to prohibit UCPA from taking any action if that requirement or prohibition would expose UCPA to liability for negligence (including negligence in making referrals) or malpractice. Further, this Final Order and any reports required hereunder shall not be introduced as evidence and cannot be used for any purpose or in any proceeding by a third party.

30.    **Notices** - All notices required by this Final Order shall be sent by certified or registered mail, return receipt requested, postage prepaid or by hand delivery to:

**If to the Attorney General:**

Chief Deputy Attorney General
Antitrust Section
Office of Attorney General
14th Floor, Strawberry Square
Harrisburg, PA 17120

**If to UCPA:**

Urology of Central Pennsylvania, Inc.
1023 Mumma Road
Lemoyne, PA 17043

**Copies to:**

David A. Ettinger
Honigman Miller Schwartz and Cohn LLP
2290 First National Building
660 Woodward Avenue
Detroit, Michigan 48226

31.   **Averment of Truth** - UCPA avers that, to the best of their knowledge, the information they have provided to the Attorney General in connection with this Final Order is true.

32.   **Termination** - This Final Order shall expire on July 1, 2015 or upon the sale of UCPA unless this Court has determined that this Final Judgment shall apply to the  Purchaser of UCPA, pursuant to the provisions of paragraph 33 hereof.

33.   **Modification**

A.   If either the Attorney General or UCPA believes that

modification of this Final Order would be in the public

interest, that party shall give notice  to the other and the

parties shall attempt to agree on a modification.  If the

parties agree on a modification, they shall jointly petition the

Court to modify the Final Order.  If the parties cannot agree on

a modification, the party seeking modification may petition the

Court for modification and shall bear the burden of persuasion

that the requested modification is in the public interest.

B.   If after receiving notice pursuant to Paragraph 21.1, the

Attorney General believes that this decree should apply to

the purchaser of UCPA, the Attorney General shall (within the

90 day period after notice) request this Court to apply this Final

Order to such purchaser.  Any such request shall include

allegations and supporting evidence sufficient to provide the

level of specificity required by *Bell Atl. Corp. v. Twombly,* 550

U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).

In that event, the Attorney General shall possess the burden of

proving to this Court that continuation of this Order to apply to

24

proving to this Court that continuation of this Order to apply to such purchaser is necessary to avoid substantial future competitive harm from the formation  of UCPA; and is in the public interest; and that the benefit from such continuation outweighs the harm to the purchaser therefrom.  UCPA may request that this Court determine, within the 90 day period, whether there is a sufficient basis for the Attorney General's request to justify further proceedings after conclusion of the 90 day period.

C.    In no event shall this Order (i) have a term which extends beyond four years; or (ii) result in application of the terms of this Order to any services or operations of the purchaser other than those acquired from UCPA. Moreover, in no event shall the provisions of Section 15 hereof apply to any managed care negotiations of the purchaser except if, and to the extent that, the purchaser seeks separate and distinct prices for Professional Urology Services.

34.   **Accountable Care Organizations**

34.1   If UCPA becomes part of an Accountable Care Organization ("ACO") approved by the Centers for Medicare and Medicaid Services, this Final Judgment shall not apply to the conduct of such ACO.

34.2   If UCPA participates in a venture involving one or more other Providers offering bundled (primarily complementary) services to Health Plans through a program intended to offer greater efficiencies, higher quality and/or greater cost savings, the provisions of ¶¶ 32 (with regard to expiration) and 33A and C (including those provisions applicable to purchasers) hereof shall also apply to such organization and UCPA's participation therein.

35.   **Retention of Jurisdiction** - Unless this Final Order is terminated early pursuant to ¶ 32, jurisdiction is retained by the United States District Court for the Middle District of Pennsylvania until July 1, 2015 to enable any party to apply to this Court for such further orders and directions as may be necessary and appropriate for the interpretation, modification and enforcement of this Final Order.

36.    **No Admission of Liability -** UCPA, desiring to resolve the

Attorney General's concerns without trial or adjudication of any issue of fact or

law, has consented to entry of this Final Order, which is not an admission of

liability by UCPA as to any issue of fact or law and may not be offered or

received into evidence in any action as an admission of liability, whether

arising before or after the transaction referenced herein.

37.    **Counterparts -** This Final Order may be executed in counterparts.

### V.    Public Interest Determination

38.    The Court, upon averment of the Commonwealth of Pennsylvania,

finds that entry of this Final Order is in the public interest.

Dated this 30th day of August, 2011

**COMMONWEALTH OF
PENNSYLVANIA**

Linda L. Kelly
Attorney General
(717) 787-3391


Alexis L. Barbieri
Executive Deputy Attorney General
Public Protection Division

By: _____
James A. Donahue, III
Chief Deputy Attorney General
Antitrust Section
(717) 787-4530

Tracy W. Wertz
Deputy Attorney General
Antitrust Section

Jennifer A. Thomson
Deputy Attorney General
Antitrust Section

Attorneys for the Commonwealth of
Pennsylvania
Office of Attorney General
14th Floor, Strawberry Square
Harrisburg, PA 17120

**UCPA**


By: _____
David A. Ettinger
Honigman Miller Schwartz and Cohn
LLP
2290 First National Building
660 Woodward Avenue
Detroit, MI  48226



So Ordered:

_____
Judge U.S.D.J.

28